UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SANDERS                                    CIVIL ACTION

VERSUS                                     NO: 14-845

DILLARD UNIVERSITY                         SECTION: "J" (3)

## ORDER & REASONS

Before the Court is Defendant Dillard University's *Motion to Dismiss Dessie Sanders' Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)* **(Rec. Doc. 23)**, Plaintiff Dessie Sanders' opposition thereto (Rec. Doc. 28), and Defendant's reply. (Rec. Doc. 31) Having considered the motions and memoranda, the record, and the applicable law, the Court finds that Defendant's motion should be **GRANTED IN PART** for the reasons set forth more fully below.

## FACTS AND PROCEDURAL BACKGROUND

This action arises from Defendant's decision not to renew Plaintiff's appointment as an Adjunct Professor of English. (Rec. Doc. 23-1, p. 1) On September 5, 2013, Defendant, a "fully accredited, private, historically black, non-profit University," appointed Plaintiff as an Adjunct Professor of English for the Fall 2013 semester, which appointment expired on December 16, 2013. Id. Defendant states that its adjunct instructors do not enjoy any form of contractual security beyond the "current" semester." Id.

At some point during the Fall 2013 semester, Plaintiff alleges that the Coordinator of the English Department, Dr. Mona Lisa Saloy, attempted to engage Plaintiff in a scheme to "constructively terminate" two white female professors in her department. (Rec. Doc. 1, p. 1) According to Plaintiff,

> [Dr. Saloy's] position was that the two professors should not be teaching English and literature (specifically African American literature) to Dillard University students, because both professors are white, and Dillard University is [a historically black university]. [Dr. Saloy's] claim was that both professors did not get along with her, in addition to being "mean and less nurturing towards the students, because they are Black, and that the university needs more professors such as [Plaintiff]: "of color," to help teach and nurture Dillard students, because "[the two white professors] do not understand the Black experience."

Id. When Plaintiff refused to assist Dr. Saloy in her scheme, Plaintiff alleges that Dr. Saloy "attacked and retaliated against [her]." Id.

Plaintiff makes numerous other allegations against Dr. Saloy. First, Plaintiff alleges that "Dr. Saloy intentionally tried to rally various female students against [Plaintiff], by claiming that [she] was neglecting their academic needs [on November 14-19, 2013]." (Rec. Doc. 9, p. 1) However, Plaintiff's doctor had excused her from work during that week. (Rec. Doc. 1, p. 10) Second, Plaintiff alleges that Dr. Saloy called Plaintiff's landlord during that week and stated that Plaintiff "better watch it, because several female students do not like

[Plaintiff] and that [Plaintiff] did not want to mess with her." (Rec. Doc. 28, pp. 2-3) Third, Plaintiff alleges that Dr. Saloy attempted to have Plaintiff removed from the schedule for the Spring semester on or before November 20, 2013. Id. at 3. And by January 8, 2014, Dr. Saloy had recommended revoking Plaintiff's contract for the Spring. Id. Lastly, Plaintiff seems to allege that because of Dr. Saloy, Plaintiff's fibroid tumors caused her extreme pain, and the English Department discovered Plaintiff's medical condition. Id.

Plaintiff alleges that Defendant was aware of Dr. Saloy's behavior during the Fall 2013 semester. (Rec. Doc. 28, p. 2) Plaintiff states that she met with Corthel Clark, Chair of Arts & Humanities; Robert Collins, Dean of Arts & Humanities; Yolanda Page, Vice President of Academic Affairs; Abdel Darwish, Assistant Vice President of Academic Affairs; and Randy Dukes, Attorney and Human Resources Director.[1] See id. During these meetings or conferences, she informed them that "Dr. Saloy stated that if I agreed to help[] her constructively terminate [a white professor] the exchange would be the full-time position as English faculty." Id.

---

[1] Plaintiff, however, was unable to discuss her complaints against Dr. Saloy with Dr. Page individually. (Rec. Doc. 28, p. 1) Plaintiff alleges that Dr. Page refused to see her, and that Dr. Page's assistant referred her to Dr. Darwish. Id. at 2. Dr. Darwish instructed Plaintiff to document her complaints and to go see the Director of Human Resources, Randy Dukes. Id. Dr. Darwish further instructed her to "file with the EEOC." Id.

Plaintiff alleges that Defendant permitted her contract to expire despite promising that she could return for the Spring 2014 semester. Specifically, "[Plaintiff] was promised throughout the [Fall 2013] semester by Dr. Robert Collins, Dean of Arts & Humanities, Corthel Clark, Chair, and Dr. Abdel Darwish, Associate VP of Academic Affairs that [her] job as an Adjunct Professor would not be jeopardized by Dr. Saloy's unjust actions, and that [she] would be returning for the 2014 Spring semester." (Rec. Doc. 9, pp. 1-2) Plaintiff further alleges that, following Dr. Saloy's November 20th attempt to remove Plaintiff from the calendar, Corthel Clark "assured [her] that they would take care of Dr. Saloy and that [Plaintiff] would be returning for the spring 2014 semester." (Rec. Doc. 28, p. 3)

Plaintiff filed a Charge of Discrimination dated February 15, 2014, with the U.S. Equal Employment Opportunity Commission (EEOC) and the Louisiana Commission on Human Rights. In the complaint, Plaintiff indicated that she was retaliated against based on her color and further alleged as follows:

> My employment as an Adjunct Professor, English began on September 9, 2013. My immediate supervisor was Corthel Clark, Chair of Humanities. Throughout the semester I was harassed by Dr. Mona Lisa Saloy (B), Coordinator of English. Dillard University employs more than 15 persons.
>
> I believe I was harassed and retaliated against because of my dark skin color in violation of Title VII of The Civil Rights Act of 1964, as amended.

In response, she received a Notice of Right to Sue dated February 25, 2014, permitting her to file suit under "Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA)" within ninety days of receipt of the letter. (Rec. Doc. 1, p. 2)

Plaintiff filed suit in this Court on April 14, 2014. (Rec. Doc. 1) In her complaint, she explains that Defendant discriminated against her on the basis of color and retaliated against her after she refused to assist Dr. Saloy with her scheme to terminate two white professors in the English Department. Id. at 1. She also asserts that Dr. Saloy's behavior resulted in a "den[ial of her] right to take a medical leave of absence on October 15, 2013," equated to the "intentional intent to cause emotional distress," caused her wrongful termination, and violated the Equal Pay Act. Id. Plaintiff amended her complaint on May 5, 2014, adding claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, defamation, Due Process and Equal Protection violations, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages. (Rec. Doc. 9)

On November 4, 2014, Defendant filed the instant *Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1)*

*and 12(b)(6)*. **(Rec. Doc. 23)** Plaintiff opposed the motion on December 8, 2014. (Rec. Doc. 28) Defendant replied on December 10, 2014. (Rec. Doc. 29)

**LEGAL STANDARD**

## A. 12(b)(1) Motion to Dismiss

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 762 (5th Cir. 2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). United States v. City of New Orleans, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference

that the defendant is liable for the misconduct alleged." Id. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.

## B. 12(b)(6) Motion to Dismiss

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v.

U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker
v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not,
however, bound to accept as true legal conclusions couched as
factual allegations. Iqbal, 556 U.S. at 678. Although *pro se*
plaintiffs are held to less stringent standards than those
represented by lawyers, "conclusory allegations or legal
conclusions masquerading as factual conclusions will not suffice
to prevent a motion to dismiss." Taylor v. Books A Million,
Inc., 296 F.3d 376, 378 (5th Cir. 2002).

## PARTIES' ARGUMENTS & DISCUSSION

### A. 12(b)(1) Motion to Dismiss

Defendant argues that this Court lacks subject matter
jurisdiction over Plaintiff's discrimination claims based on age
or disability because Plaintiff failed to exhaust her
administrative remedies under the Americans with Disabilities
Act (ADA) or the Age Discrimination in Employment Act (ADEA)
before filing her lawsuit. (Rec. Doc. 23-1, pp. 4-5) Plaintiff's
opposition does not address this argument.

After reviewing Plaintiff's complaints and opposition, it
does not appear to the Court that Plaintiff has even asserted
claims under the ADA or the ADEA. Defendant explains that
Plaintiff filed another Charge of Discrimination against
Defendant on June 24, 2014, in which she asserts claims under
both of these acts. Id. at 3. Defendant further states that the

EEOC dismissed Plaintiff's charge because it was "unable to conclude that the information obtained establishes violations of the [civil rights] statutes." Id. Neither the charge nor the EEOC's decision, however, is in the record. The Court finds it unnecessary to dismiss claims that Plaintiff herself has not asserted before the Court. The Court therefore denies Defendant's motion to dismiss for lack of jurisdiction.

## B. 12(b)(6) Motion to Dismiss

Defendant argues that Plaintiff fails to state a claim upon which relief can be granted, and therefore, the Court should dismiss Plaintiff's complaint. Id. at 5-15. The Court will address each of Plaintiff's claims individually.

### 1. Title VII Discrimination

Defendant asserts that Plaintiff fails to state a claim under Title VII or the Equal Pay Act because (1) she "alleges *no facts*" in support of the claims, (2) she fails to allege that she either opposed an unlawful practice or participated in a proceeding under Title VII in support of her retaliation claim, and (3) the alleged discrimination was not the but-for cause of her termination. Id. at 7. Plaintiff generally reasserts her Title VII claims in her opposition without directly addressing these arguments. She does not mention the Equal Pay Act in her opposition.

#### a. Sufficiency of Plaintiff's Factual Allegations

The Court first addresses whether Plaintiff pleaded facts in support of her Title VII claims of discrimination and retaliation and her Equal Pay Act claim. In arguing that Plaintiff has not alleged sufficient facts in support of these claims, Defendant relies upon Brittain v. Trane A. Standard, 58 F. App'x 596 (5th Cir. 2003). The Court, however, finds this case to be distinguishable with respect to Plaintiff's Title VII retaliation claim. In Brittain, the plaintiff included in her EEOC charge only that she was "terminated . . . due to [her] disability" and that she had "been discriminated against because of disability in violation of the American with Disabilities Act of 1990." Id. at *1. Her complaint provided little clarification. In it, she alleged violations of multiple laws in an indecipherable jumble. See id. After the Court granted her an opportunity to clarify her complaint, she again failed to allege any facts in support of her claim. Id. at *1-2. Here, although Plaintiff's Charge of Discrimination includes little factual detail, Plaintiff did check the box for "retaliation," and her complaints provide factual support for this claim. For example, Plaintiff alleges that Defendant retaliated against her after she refused to engage in Dr. Saloy's plan to terminate two other professors based on their color. The Court generally finds that Plaintiff has pleaded facts in support of her Title VII retaliation claim.

The Court agrees, however, that Plaintiff has failed to allege any facts whatsoever to support her claims for Title VII discrimination or violations of the Equal Pay Act. First, although Plaintiff includes conclusory statements in her Charge of Discrimination and complaints alleging that Defendant discriminated against her based on her color, she provides no factual basis for such a claim. The allegations underlying her retaliation claim do not reveal that Defendant discriminated against Plaintiff based on her race. Second, Plaintiff merely states that her Notice of Right to Sue from the EEOC permits her to sue under the Equal Pay Act. (Rec. Doc. 1, p. 1) She states nothing further with regard to the Act or pay disparity. Thus, the Court finds that Plaintiff has failed to state a claim for Title VII discrimination or violations of the Equal Pay Act.

**b. Elements of a Title VII Retaliation Claim**

Defendant argues that Plaintiff fails to state a claim for retaliation under Title VII because she has not alleged that she opposed an unlawful practice or participated in a Title VII proceeding and she cannot show causation. "Where a plaintiff alleges unlawful retaliation in violation of Title VII, the court employs the burden-shifting analysis [of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).]" Thompson v. Somervell Cnty., Tex., 431 Fed. Appx. 338, 340-41 (5th Cir. 2011). "Under the McDonnell Douglas framework, an employee must

first establish a prima facie case of retaliation." Id. at 340 n.1. In order to state a claim for retaliation, a plaintiff must allege (1) she was engaged in protected activity, (2) she was subjected to an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.,* 641 F.3d 118, 129 (5th Cir. 2011).

First, Plaintiff's complaint reveals that Plaintiff was engaged in a protected activity. The Court interprets Plaintiff's charge and complaint as alleging that her opposition to Defendant's unlawful practice—Dr. Saloy's plan to terminate two professors based on their color—led to her termination.[2] This opposition constitutes a protected activity; **Title VII** prohibits an employer from retaliating against an employee because she has either "participated in any manner in an investigation, proceeding, or hearing" under **Title VII** or "opposed any practice made ... unlawful ... by this subchapter." 42 U.S.C. § 2000e-3(a). "The term 'oppose,' being left undefined by the statute, carries its ordinary meaning, *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979): 'to resist or antagonize ...; to contend against; to confront; resist;

---

[2] Plaintiff also suggests in her complaint that "[she] was released from [her] contract because the university had received letter from the EEOC prior to Jan. 8th, 2014." (Rec. Doc. 1, p. 6) The Court does not focus on this remark because it is not clear to the Court that Plaintiff notified the EEOC regarding the alleged discrimination before February 2014.

withstand,'" Webster's New International Dictionary 1710 (2d ed.1958)." Crawford v. Metropolitan Government of Nashville and Davidson Cnty., Tenn., 555 U.S. 271, 276 (2009). "'When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication' virtually always 'constitutes the employee's *opposition* to the activity.'" Id. Here, Plaintiff states that she complained of Dr. Saloy's behavior to several of her superiors at Dillard, including the Director of Human Resources.[3] (Rec. Doc. 28, pp. 1-3) Accepting these allegations as true, the Court cannot say that Plaintiff failed to allege that she opposed Defendant's action.

Second, it is clear that Plaintiff has alleged an adverse employment action. Defendant does not dispute Plaintiff's allegation that her employment terminated after the Fall 2013 semester. Nor does Defendant argue that termination does not constitute an adverse employment action. Thus, the Court finds that Plaintiff has satisfied the second requirement for stating a prima facie case. See, e.g., Anderson v. City of Dallas, 116

---

[3] Because Plaintiff is pro se, the Court considers the additional factual allegations in Plaintiff's opposition. Even in Plaintiff's complaint, however, there is a notation to support her claim that she opposed Dr. Saloy's discriminatory conduct. Plaintiff notes that Randy Dukes, the Director of Human Resources, "refused to listen" to her concerns as early as November 20, 2014. (Rec. Doc. 1, p. 7) This suggests to the Court that Plaintiff is alleging that she shared her concerns with Mr. Dukes, but that he did not take them seriously or move to address them.

Fed. Appx. 19, 27-28 (5th Cir. 2004)(noting that adverse employment actions include being fired or discharged).

Finally, Plaintiff must allege a causal relationship between the protected activity and the adverse employment action. Plaintiff's complaint suggests that she raised her concerns regarding Dr. Saloy's behavior with Mr. Dukes on November 20, 2013. (Rec. Doc. 1, p. 7) She further alleges that she was released as a result of her opposition to Dr. Saloy's plan. Id. at 1. Plaintiff's opposition states that Dr. Saloy attempted to remove Plaintiff from the Spring 2014 schedule on November 20, 2013, the same day she allegedly raised her concerns with Mr. Dukes.[4] (Rec. Doc. 29, p. 3) "Close timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation." Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997). Here, the Court finds that Plaintiff has shown a causal connection sufficient to make a prima facie case by alleging their close timing. Although Defendant provides multiple reasons for Plaintiff's termination,[5] the Court cannot say that Plaintiff has failed to make out a prima facie case and, therefore, to state a

---

[4] Plaintiff's opposition, however, seems to state that she met with Mr. Dukes on November 21, 2013. (Rec. Doc. 28, p. 2)
[5] Such reasons include an allegedly unexplained absence in November, the use of improper class materials, the University's decision to cut back on adjunct faculty more generally, etc.

14

claim. Defendant's arguments would more properly be advanced in a motion for summary judgment.[6]

## 2. Intentional Infliction of Emotional Distress

Defendant argues that Plaintiff fails to state a claim for intentional infliction of emotional distress (IIED) because she does not allege facts in support of all of the elements of an IIED claim. (Rec. Doc. 23-1, pp. 10-11) Defendant asserts that workplace disputes rarely give rise to an IIED claim. Id. at 11. Plaintiff does not address these arguments in her opposition. Instead, she adds that Dr. Saloy called Plaintiff's landlord and threatened Plaintiff. She also adds that "[Dr. Saloy's] misconduct and unethical behaviors caused [her] to experience severe pelvic pain, emotional distress, headaches, and bleeding for two weeks." (Rec. Doc. 28, p. 3) She explains that she suffered two episodes of severe pelvic bleeding during the Fall 2013 semester. Id. Plaintiff alleges that her doctor told her that she needed to "do something about . . . Dr. Saloy, as the stressor." Id.

Louisiana law recognizes the tort of intentional infliction of emotional distress. See White v. Monsanto Co., 585 So. 2d 1205, 1208-09 (La. 1991). To state a claim for intentional infliction of emotional distress, a plaintiff must establish

---

[6] Because this federal law claim remains, the Court will not address Defendant's argument that the Court should decline to exercise supplemental jurisdiction if only Plaintiff's state law claims remain.

"(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." Id. at 1209. "Activity in the Louisiana workplace environment can give rise to a cause of action for intentional infliction of emotional distress, but 'this state's jurisprudence has limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time.'" King v. Bryant, 2001-1379, pp. 3-4 (La. App. 3 Cir. 7/10/02); 822 So. 2d 214, 217.

The Louisiana Supreme Court described the type of conduct that could give rise to a meritorious claim of intentional infliction of emotional distress in White v. Monsanto Co.

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."

585 So. 2d at 1209 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)).

Here, Plaintiff's pleadings and opposition include little factual detail relating to Dr. Saloy's actions. Instead, they often focus on the alleged effects of those actions. Her original complaint merely states that Dr. Saloy "harass[ed] and retaliate[ed]" against her, and that her behavior resulted in "intentional intent to cause emotional distress, which greatly affected my health." (Rec. Doc. 1, p. 1) Additionally, Plaintiff's complaint includes a medical bill from a March 9, 2014, hospital visit in Dallas for uterine fibroids and chronic pelvic pain. Id. at 24. On it, she includes handwritten notes alleging that the visit was the result of her landlord evicting her, which she alleges occurred after Dr. Saloy contacted her landlord to tell him that Defendant would not employ Plaintiff after the Fall 2013 semester. Id. She reasserts the claim in her amended complaint, but does not provide any additional details. (Rec. Doc. 9, p. 1) Her opposition again includes information on the effects of Dr. Saloy's alleged conduct, as summarized above. (Rec. Doc. 28, p. 3) Plaintiff does, however, add that Dr. Saloy called Plaintiff's landlord and stated that Plaintiff "better watch it, because several female students do not like [Plaintiff] and that [Plaintiff] did not want to mess with her." Id. at 3. Considering the allegations of Dr. Saloy's alleged conduct, however, the Court concludes that it does not rise beyond "insults, indignities, threats, annoyances, petty

17

oppressions, or other trivialities." <u>See</u> <u>White</u>, 585 So. 2d at 1209. The Court finds that Plaintiff has failed to state a claim for intentional infliction of emotional distress.

### 3. Defamation

Defendant argues that Plaintiff has failed to state a claim for defamation because she failed to plead that Dr. Saloy made any defamatory statement and that she suffered any injury. (Rec. Doc. 23-1, p. 12) First, Defendant stresses that Dr. Saloy's alleged statement to students that Plaintiff "neglected their academic needs" is an opinion that does not qualify as a defamatory statement. <u>Id.</u> Defendant likens this statement to that at issue in <u>Singleton v. St. Charles Parish</u>, 02-590 (La. App. 5 Cir. 11/26/02); 833 So. 2d 486, 496, wherein the Louisiana Court of Appeal for the Fifth Circuit held that the defendant's statements calling the plaintiff "lazy" were opinion and not actionable as defamation. <u>Id.</u> Second, Plaintiff failed to allege any facts showing that she suffered an injury as a result of Dr. Saloy's statements. <u>Id.</u> Plaintiff's statement that Dr. Saloy "caus[ed] injury to [Plaintiff's] good reputation" is conclusory. <u>Id.</u> Defendant argues that these defects warrant dismissal of Plaintiff's defamation claim. <u>Id.</u> Plaintiff's opposition does not address her defamation claim.

"Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name."

Costello v. Hardy, 2003-1146, p. 12 (La. 1/21/04); 864 So. 2d 129, 139. "Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Trentecosta v. Beck, 96-2388, p. 10 (La. 10/21/97); 703 So. 2d 552, 559. "If even one of the required elements of the tort is lacking, the cause of action fails."[7] Costello, 2003-1146 at 12; 864 So. 2d at 140.

The Court first will address whether Plaintiff has alleged an actionable defamatory statement. "A plaintiff alleging a cause of action for defamation must set forth in the petition with reasonable specificity the defamatory statements allegedly published by the defendant." St. Germain v. Coulon, 04-531, p. 5 (La. App. 5 Cir. 10/26/04); 887 So. 2d 608, 611. "Generally, a communication is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise exposes a person to contempt or ridicule." Fitzgerald v. Tucker, 98-2313 (La. 6/29/99); 737 So. 2d 706, 716. A "pure statement of opinion" usually is not actionable in defamation because "falsity is an indispensable element of any

---

[7] It does not appear to the Court that Plaintiff has alleged that Dr. Saloy used words qualifying as defamatory per se. Thus, "[P]laintiff must prove, in addition to defamatory meaning and publication, the elements of falsity, malice (or fault) and injury." Costello, 2003-1146 at 14; 864 So. 2d at 140.

defamation claim, and a purely subjective statement can be neither true nor false." Bussie v. Lowenthal, 535 So. 2d 378, 381 (La. 1988). However, "if a statement of opinion implies that certain facts exist, then such a statement, even though couched in terms of an opinion, could certainly give rise to a defamation action if the implied factual assertions are defamatory and false." Fitzgerald, 737 So. 2d at 717.

Here, Plaintiff's defamation claim seems to derive from Dr. Saloy's alleged statements to the effect that Plaintiff was "neglecting [her students'] academic needs." (Rec. Doc. 9, p. 1) Defendant argues that this statement is a purely subjective one, akin to calling Plaintiff "lazy," and the Court agrees. "[T]he crucial difference between statement of fact and opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." Mashburn v. Collin, 355 So. 2d 879, 885 (La. 1977). Accusing Plaintiff of "neglecting" students does not suggest the existence of some underlying fact. It is pure opinion, which "can be neither true nor false." See Singleton, 02-590, pp. 15-16; 833 So. 2d at 496. Plaintiff therefore has failed to allege the existence of a false and defamatory statement as required to state a claim for defamation.

Even if the Court were to find Dr. Saloy's statement false and defamatory, however, the Court does not find that Dr. Saloy made the statement with the requisite fault. "The fault requirement is often set forth in the jurisprudence as malice, actual or implied." <u>Costello</u>, 2003-1146 at 12; 864 So. 2d at 139. "Malice (or fault), for purposes of the tort of defamation, is a lack of reasonable belief in the truth of the statement giving rise to the defamation." <u>Id.</u> at 143. Here, Plaintiff seems to argue that Dr. Saloy's statement was false and defamatory because it suggested that she canceled classes without an excuse. Plaintiff further states that such a suggestion is false because her doctor excused her from work that week. Plaintiff alleges that she submitted a copy of her doctor's excuse to Department of Arts & Humanities' Chair, Corthel Clark, and Secretary, Zena Ezeb. (Rec. Doc. 1, pp. 8-9) Plaintiff does not allege, however, that she told Dr. Saloy that her doctor excused her from work or that someone else informed Dr. Saloy of that fact.[8] The Court therefore finds that, to the extent that Dr. Saloy's statement suggests an underlying fact that is false, there is no evidence to support the conclusion that Dr. Saloy made the aforementioned statement with "a lack of reasonable belief in [its] truth." Thus, the Court concludes

---

[8] Plaintiff's conclusory allegation that "Dr. Saloy, as representative of Dillard University, purposely set out to defame [her] professional character by falsely causing injury to [her] good reputation" is insufficient to cure this defect. <u>See</u> (Rec. Doc. 9, p. 1).

that Plaintiff has failed to show that Dr. Saloy made the statement with the fault required to support a claim for defamation.

Additionally, the Court notes that Plaintiff fails to allege any actual injury as a result of the alleged statement. Although it is true that "[t]he injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, [or] embarrassment and mental anguish," a plaintiff still "must present competent evidence of the injuries suffered." Costello, 2003-1146 at 14; 864 So. 2d at 141. Plaintiff has failed to present evidence of any injury resulting from the alleged statement beyond a multitude of conclusory remarks. Given the aforementioned deficiencies, the Court finds that Plaintiff has failed to state a claim for defamation.

### 4. Constitutional Claims

Defendant asserts that Plaintiff's constitutional claims must fail because Dillard University is a private institution. (Rec. Doc. 23-1, p. 13) Plaintiff does not address these arguments.

The Court finds that Plaintiff has failed to state a claim for the violation of her constitutional rights. (Rec. Doc. 23-1, p. 13) As Defendant argued in its motion, Plaintiff cannot maintain her constitutional claims without alleging some kind of

government or state actor. Id. (citing Lovell v. Hurford, No. 96-1178, 1996 WL 331101, at *4 (E.D. La. June 14, 1996)). Plaintiff has not alleged that Defendant is a public institution or that it was otherwise clothed with state action at the time of the alleged violations, and the Court finds no basis for finding as much. Plaintiff therefore failed to state a claim for the violation of her constitutional rights. See Blouin v. Loyola Univ., 506 F.2d 20, 21-22 (5th Cir. 1975).

**5. Negligence Claims**

Defendant argues that Plaintiff cannot maintain claims sounding in negligence, such as negligent infliction of emotional distress and "grievance and gross negligence," because workers' compensation provides the exclusive remedy for an employee injured by the negligent acts of her employer or co-employee. (Rec. Doc. 23-1, pp. 13-14) Plaintiff does not address this argument in her opposition.

"In Louisiana, as in most states, workers' compensation generally is the exclusive remedy for a workplace injury." Grant v. Tulane Univ., No. Civ.A. 00-3465, 2001 WL 245785, at *1 (E.D. La. Mar. 9, 2001). Indeed, "Louisiana's workers' compensation statute provides the exclusive remedy for an employee injured by the negligent acts of her co-employees or employer." Lajaunie v. Hibernia Corp., No. Civ.A. 99-0285, 2000 WL 145362, at *7 (E.D. La. Feb. 8, 2000)(citing White, 585 So. 2d at 1208). "A

prerequisite to any action arising under the Louisiana Workers' Compensation Act, however, is the existence of an employer-employee relationship." Id. Louisiana's Workers' Compensation Act creates a presumption of employment for those rendering service for another in trade or business. Campora v. Falstaff, L.L.C., 2001-2014 (La. App. 4 Cir. 6/12/02); 823 So. 2d 389, 391-92 (citing La. Rev. Stat. Ann. § 23:1044). Generally, however, "for an employer-employee relationship to exist, there must be a contract of employment, either express or implied, whereby services are furnished in anticipation of compensation." Dustin v. DHCI Home Health Servs., Inc., 95-1989 (La. App. 1 Cir. 5/10/96); 673 So. 2d 356, 359.

The Court concludes that Plaintiff's claims sounding in negligence are foreclosed by Louisiana's Workers' Compensation Act. Plaintiff's complaint includes a letter from Defendant in which Yolanda Page, Vice President for Academic Affairs, orders Plaintiff to return her key and other university property because she is "no longer a Dillard University employee." (Rec. Doc. 1, p. 6) Nothing in Plaintiff's complaint, amended complaint, or opposition suggests that she was not Defendant's employee during the Fall 2013 semester. In fact, Plaintiff's opposition makes reference to an employment contract. (Rec. Doc. 28, p. 3)("As a result, by January 8, 2014, Dr. Saloy had already recommended that my contract be revoked for the

spring.").   Because   the   Court   concludes   that   Plaintiff   was
Defendant's   employee,   Louisiana's   workers'   compensation   statute
provides   Plaintiff's   exclusive   remedy   here.   The   Court   grants
Defendant's   motion   with   respect   to   Plaintiff's   claims   sounding
in negligence.

**6. Leave to Amend**

Although   Plaintiff   has   not   requested   leave   to   amend   her
complaint   in   response   to   Defendant's   motion   to   dismiss,   the
Court   will   address   the   issue.   The   Court   acknowledges   that   it   is
common   to   permit   a   plaintiff   to   amend   his   or   her   complaint   in
response   to   a   motion   to   dismiss   pursuant   to   Federal   Rule   of
Civil   Procedure   12(b)(6).   See, e.g., Stripling v. Jordan Prod.
Co., LLC, 234 F.3d 863, 872-73 (5th Cir. 2000). However, "[i]t
is   within   the   district   court's   discretion   to   deny   [leave]   to
amend   if   it   [would   be]   futile." Id. The   Fifth   Circuit   defines
"futility"   in   this   context   to   mean   "that   the   amended   complaint
would   fail   to   state   a   claim   upon   which   relief   could   be   granted."
Id. at 873. Here, because Plaintiff has not requested leave, the
Court   cannot   truly   examine   whether   her   proposed   amendment   would
be   futile.   The   Court   notes,   however,   that   Plaintiff   has
previously   amended   her   complaint.   Additionally,   in   analyzing
Defendant's   motion   to   dismiss,   the   Court   considered   the
allegations   Plaintiff   set   forth   in   her   opposition.   Consequently,
the   Court   reasons   that   granting   Plaintiff   leave   to   amend   her

complaint again would be futile. If, for example, other statements or threats had occurred to support Plaintiff's defamation or intentional infliction of emotional distress claims, Plaintiff surely would have included them in either her complaint, amended complaint, or opposition. The Court therefore declines to grant Plaintiff leave to amend her complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).* **(Rec. Doc. 23)** is **GRANTED IN PART.**

**IT IS FURTHER ORDERED** that the motion is **GRANTED** with respect to Plaintiff's Title VII discrimination, Equal Pay Act, intentional infliction of emotional distress, defamation, constitutional, and negligence claims.

**IT IS FURTHER ORDERED** that the motion is **DENIED** with respect to Plaintiff's Title VII retaliation claim.

**IT IS FURTHER ORDERED** that the motion is **DENIED** inasmuch as it seeks to dismiss claims under the ADA or ADEA that Plaintiff has not alleged.

New Orleans, Louisiana this 23rd day of December, 2014.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE